UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SANTANA RODRIGUEZ BALDERAS,                    CIVIL NO. 07-1311 (JNE/JSM)

      Petitioner,

v.                                             <u>REPORT AND RECOMMENDATION</u>

STATE OF MINNESOTA,

      Respondent.

JANIE S. MAYERON, United States Magistrate Judge.

      This matter is before the undersigned United States Magistrate Judge of the District Court on the Petition of Santana Rodriguez Balderas for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  [Docket No. 1].  Petitioner has also filed motions to appoint counsel[1], for a hearing, [Docket No. 21], to compel, [Docket No. 22], and to amend/correct.  [Docket Nos. 15, 21, 22, 23].[2]

      Petitioner appears <u>pro</u> <u>se</u>.  Respondent is represented by James P. Spencer, Senior Assistant County Attorney.

      The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court DENIES Petitioner's various motions, and concludes that Petitioner's habeas corpus petition should be DENIED, and this action should be DISMISSED WITH PREJUDICE.

---

[1]     Within this motion, Petitioner also asked for the appointment of an interpreter. <u>See</u> Affidavit of Petitioner in Support of Application for Appointed Counsel, p. 2. [Docket No. 16].

[2]     Rather than addressing these motions in a separate Order, the Court will address them in this Report and Recommendation.

I.    **BACKGROUND**

The Minnesota Bureau of Criminal Apprehension set up three controlled buys of cocaine, with the purchases made by a confidential reliable informant (CRI) from Petitioner.  State v. Rodriguez, 2006 WL 1890176 at *1 (Minn. Ct. App. July 11, 2006). The CRI made the following buys:  (1) purchased 26.8 grams of cocaine from Petitioner on September 27, 2002; (2) purchased 27.7 grams of cocaine from Petitioner on October 4, 2002 and; (3) purchased 109 grams of cocaine from Petitioner on November 13, 2002.  Id.

Petitioner was first charged by the state on November 18, 2003.  Id.  The state amended its complaint on January 26, 2004, and the court scheduled a trial for August 2004.  Id.  On July 23, 2004, Petitioner retained private counsel to replace the appointed public defender.  See Respondent's Exhibit C (Appellant's Brief to the Minnesota Court of Appeals, p. 5).  [Docket No. 4].  Nine days before trial was set to begin, Petitioner filed a continuance motion, which the trial court denied.  Rodriguez, 2006 WL 1890176 at *1.  On August 24, 2004, Petitioner's attorney requested an accommodation of the trial due to scheduling conflicts and the court rescheduled the trial for January 2005.  Id. However, on September 7, 2004, Petitioner filed a speedy-trial demand.  Rodriguez, 2006 WL 1890176 at *1.  Consequently, the district court rescheduled the trial for the period between October 27 and November 5, 2004.  Id.

On October 6, 2004, Petitioner's attorney wrote to the court stating that while he was not requesting a continuance or withdrawing the speedy trial demand, he was asking for accommodation to address the various scheduling conflicts within the time set aside for trial of Petitioner's case.  Id.  On November 2, 2004, the trial court rescheduled the trial to take place between November 10 and 19, because of other

speedy-trial request cases it had on the calendar.  Id.   On November 13, 2004, Petitioner filed a motion to dismiss because he did not receive a speedy trial by the deadline of November 5, 2004.  Id.  The trial court found that good cause existed for the delay of the trial, and denied the motion on November 13, 2004.  Id.  The trial began on November 15 and concluded on November 17, 2004.  Id.

On November 17, 2004, Petitioner was convicted in Olmstead County District Court of three counts of first-degree controlled substance crime in violation of Minn. Stat. § 152.021, subd. 1(1) (2002).  Id.  He was sentenced on the three counts to concurrent sentences of 86 months, 110 months, and 129 months.  Id.[3]

At sentencing, Petitioner requested a downward durational or dispositional departure from the guidelines sentence, and requested that the court not use a cumulative criminal-history score when sentencing him for the second and third offenses.  Id.  The court denied this motion.  Id.

Petitioner filed a direct appeal of his conviction and sentencing to the Minnesota Court of Appeals.  He argued the trial court violated his right to a speedy trial, and abused its discretion by refusing to depart downward from the presumptive guidelines sentence.  Id. at *2.  In a pro se supplemental brief, he also argued his trial counsel was ineffective.  Id.

With respect to his speedy trial claim, the Minnesota Court of Appeals recognized that both the federal and state constitutions guarantee criminal defendants the right to a speedy trial.  Id.  However, the court concluded that good cause existed for extending the trial date, and the rescheduling of the trial did not prejudice Petitioner.  Id.

With respect to sentencing, the appellate court held that the trial court did not err

---

[3]     According to recent correspondence to the Court, Petitioner is currently serving

by imposing multiple sentences because the offenses did not occur at the same time or place, and do not have a single criminal objective. Id. at *4. Thus, the Court of Appeals found that the trial court did not err in using the conviction on the preceding counts to calculate the criminal history score when sentencing Petitioner on the subsequent counts. Id.

The Court of Appeals also held that Petitioner failed to establish sentencing entrapment. Id. at *5. The court found that the record did not indicate that Petitioner was entrapped into selling larger quantities of cocaine than he had the intent or resources to sell. Id. Therefore, the sentencing court did not err by refusing to depart downward based on entrapment as a mitigating factor. Id.

As to Petitioner's ineffective assistance of counsel claim, the appellate court determined that he had waived the claim because he did not provide any legal or factual support. Id. The court also reviewed the record and found no basis to find that trial counsel's representation fell below an objectively reasonable standard. Id. The Minnesota Supreme Court denied review of the decision. State v. Rodriguez, 2006 WL 1890176, No. A05-966, (Minn. Ct. App. July 11, 2006) rev. denied (Minn. Sept. 16, 2006). Petitioner did not seek post-conviction relief.

Petitioner is now seeking federal habeas corpus review of his conviction and sentencing. He cites three grounds for relief. First, Petitioner claims the trial court violated his constitutional right to a speedy trial. Second, Petitioner claims the court abused its discretion by using convictions on second and third controlled buys of cocaine to enhance his sentence, when the state had enough evidence for a conviction

---

his sentence at MCF-Lino Lakes, Minnesota.

after the first buy.  Third, Petitioner claims his trial counsel was ineffective.[4]

Respondent contends that the Minnesota Court of Appeals did not unreasonably apply controlling Supreme Court precedent, <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), when it denied Petitioner's claim for violation of his right to a speedy trial.  With respect to sentencing, Respondent maintains Petitioner is not entitled to habeas review because he did not identify in his state proceedings any federal constitutional principal applicable to this claim.  Finally, Respondent argues there is an adequate and independent state ground precluding further review of petitioner's ineffective assistance of counsel claim

## II.   DISCUSSION

### A.   Petitioner's Motions

Before addressing the habeas petition, the Court will address Petitioner's various motions.

---

[4]       The Court notes that Petitioner's Brief of Facts and Reply to Respondent's Answer, [Docket No. 24] ("Reply") appears to raise constitutional claims not asserted in his habeas petition, and not presented to the state courts.  <u>See</u> Rule 2(c) of the Rules Governing Section 2254 Cases In The United States District Courts, (a petition for writ of habeas corpus "shall specify <u>all</u> the grounds for relief which are available to the petitioner").  Thus, the Court has not considered the following claims, raised only in Petitioner's Reply:  (1) whether petitioner's right to due process under the Fifth and Fourteenth Amendments were violated by violation of his right to a speedy trial (Reply, p. 2); (2) whether petitioner's right to equal protection under the laws was violated when his speedy trial rights were violated (Reply, p. 2); (3) Whether petitioner's Sixth Amendment right to a jury trial was violated when his sentencing and aggravating factors were not submitted to the jury to decide, citing <u>Apprendi v. New Jersey</u>. (Reply, p. 2).  Even if these claims had been properly presented in the habeas petition, they were not raised in the state courts, and are procedurally defaulted for the same reasons the Court has found petitioner's sentencing entrapment claim to be procedurally defaulted.  <u>See</u> Section II(B)(2)(b), <u>infra</u>.

1.     **Motion to Appoint Counsel**

In a letter submitted to the Court on June 26, 2007, Petitioner moved this Court for appointment of counsel.  [Clerk's File, Docket No. 11.]  The Court denied this motion concluding that Petitioner has the ability to articulate his claims and argue his position despite his inability to understand the English language.  See Order dated June 29, 2007 [ECF Docket No. 11].  The Court also noted it does not have the authority to appoint an interpreter.  Id.  Petitioner then filed a new motion to appoint counsel, submitting it would be a gross miscarriage of justice to deny his request for counsel and an interpreter, because he does not fully understand the English language, and he is required to file all submissions to the Court in English.  See Affidavit of Petitioner in Support of Application for Appointed Counsel [Docket No. 16].  Petitioner asserts 28 U.S.C. § 2254 expressly endorses allowance for counsel at any stage of the proceeding.

As the Court explained in its order denying Petitioner's first motion to appoint counsel, the Court does not have authority to appoint an interpreter in a habeas case. See Mendoza v. Blodgett, No. C-89-770-JMH, 1990 WL 263527, at *15 (E.D. Wash. Dec. 21, 1990).  In addition, the Court notes, as it did in its earlier Order, that Petitioner's multiple submissions to this Court indicate that he has been able to find someone to translate for him.

Petitioner's reference to 28 U.S.C. § 2254 for the proposition that counsel can be provided at any stage of the proceeding appears to come from Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts.  However, Rule 8 relates to evidentiary hearings.  Subsection (c) provides:

> **Appointing Counsel; Time of Hearing.** If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A. The judge must conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare. These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.

The Equal Access to Justice Act, 18 U.S.C. § 3006A(a)(2)(B) provides:

> (2) Whenever the Unites States Magistrate Judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who–
> 
> ...
> 
> (B) is seeking relief under <u>section 2241</u>, <u>2254</u> or <u>2255 of title 28.</u>

The interests of justice require appointment of counsel when the court holds an evidentiary hearing. <u>Hoggard v. Purkett</u>, 29 F.3d 469, 471 (8th Cir. 2003). However, as discussed below, an evidentiary hearing is not necessary in this case. Appointment of counsel is at the discretion of the district court when an evidentiary hearing is not necessary. <u>Id.</u> In exercising its discretion, the court should consider the legal and factual complexity of the case, and petitioner's ability to present his claims. <u>Id.</u>

Petitioner filed a well-organized, detailed reply to Respondent's answer. This submission supports the Court's earlier finding that Petitioner has the ability to develop, articulate, and present his claims without benefit of counsel. <u>See</u> <u>McCall v. Benson</u>, 114 F.3d 754, 756 (8th Cir. 1997)(finding the petitioner demonstrated an ability of self-representation). Petitioner's second motion to appoint counsel [Docket No. 15] is denied.

## 2.   **Motion for a Hearing**

Petitioner also cited Rule 8 to the Rules Governing Section 2254 Cases in the United States District Courts for the proposition that he is entitled to an evidentiary hearing to develop the facts of his ineffective assistance of counsel and speedy trial claims.   The Advisory Committee Notes to the 2004 Amendments of the Rules Governing § 2254 cases, Rule 8, provide:   "Rule 8(a) is not intended to supersede the restrictions on evidentiary hearings contained in 28 U.S.C. § 2254(e)(2)."   Section 2254(e)(2) provides:

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
> > (A) the claim relies on–
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Respondent correctly observed that Petitioner's ineffective assistance of counsel claims were rejected by the Minnesota Court of Appeals based on Petitioner's failure to provide any factual basis for the claims.   Therefore, the Court will not hold an evidentiary hearing on this issue unless the Petitioner has made the requisite showing under 28 U.S.C. § 2254(e)(2)(A) and (B).

In his motion for a hearing, Petitioner has done little more than to allege that an evidentiary hearing should be held because the facts were not fully and fairly developed in state court.  More importantly, Petitioner has not established any of the exceptions set out under 28 U.S.C. § 2254(e)(2)(A) and (B), which would allow him an evidentiary hearing on ineffective assistance of counsel claims he failed to factually develop in state court.  Thus, he is not entitled to a hearing to address this claim.

To the extent that Petitioner is requesting an evidentiary hearing on claims other than ineffective assistance of counsel, the Court has reviewed the record, including the records from the state court proceedings, and finds that the motion should be denied because the issues can be resolved on the basis of the record.  See Riley v. Lockhart, 726 F.2d 421, 423 (8th Cir. 1984)(affirming dismissal without evidentiary hearing where record was sufficient to form basis for dismissal).

For all of these reasons, the Court denies Petitioner's motion for a hearing.

### 3.   Motion to Compel

Petitioner filed a motion to compel because he did not receive a copy of Respondent's Answer to Petition for Habeas Corpus.  [Docket No. 22].  Petitioner has since informed the Court that he received the copy of the Answer on July 26, 2007.  The motion is denied as moot.

### 4.   Motion to Amend/Correct

Petitioner filed a "Motion for Permission to Amend Reply to Answer" [Docket No. 23].  Within this motion, Petitioner renewed his request for a copy of Respondent's Answer, which is now moot.  Although not entirely clear, he appeared to seek an opportunity to file an amended reply after he received Respondent's Answer.

The Court subsequently directed the Clerk of Court to provide Petitioner with a

copy of Respondent's Answer, and granted Petitioner an extension of time to file a reply until August 13, 2007.  [Order, Docket No. 18].  When Petitioner later acknowledged receipt of Respondent's Answer, he stated:

> On July 23, 2007 I sent all the petitions concerning my case and the matter at hand, which at this time should be in your personal possession.  Concerning the petitions that I have filed I ask that the Court look diligently into the matter that is before them and that the proper justice be upheld, and the proper sentence imparted.  My main concern is the improper representation by the attorney that represented me.

[Docket No. 26] (Letter dated August 6, 2007).  The Court has interpreted this letter to mean that Petitioner decided to rely on the Brief of Facts and Reply to Respondent's Answer, which he signed on July 22, 2007, and filed with the Court on July 25, 2007.  [see Docket No. 24].  Petitioner had until August 13, 2007 to file his reply and he did not file an additional pleading.  Therefore, the Court denies the motion to amend/correct as moot.

**B.    Habeas Petition**

**1.    Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.  See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)).  The phrase "clearly established law" means "the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.  Taylor, 529 U.S. at 412.

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case.  See Copeland, 232 F.3d at 973.  It is not enough that the state court decision applied clearly established law erroneously, the application must also be unreasonable.  Taylor, 529 U.S. at 411.  The test is an objective one. Id. at 409.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>Lee v. Gammon</u>, 222 F.3d 441, 442 (8th Cir. 2000) (<u>citing</u> 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 362).  Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."  <u>May v. Iowa</u>, 251 F.3d 713, 716 (8th Cir. 2001) (<u>citing</u> <u>Williams</u>, 529 U.S. at 409-13).

A petitioner must exhaust his state court remedies before presenting claims in a federal habeas petition, and does so by fairly presenting his federal constitutional claims to the highest available state court.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999).  A federal claim is fairly presented when the petitioner refers to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.  <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997).

If a petition contains claims that have not been fairly presented, the court must then determine if those claims are unexhausted or procedurally defaulted.  A claim is unexhausted if the claim has not been fairly presented in one complete round of the State's established appellate review process, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999), but the petitioner has the right, under state law, to raise the claim by any available procedure.  28 U.S.C. § 2254(c).

A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.  <u>Coleman v.</u>

Thompson, 501 U.S. 722, 750 (1991).  Federal habeas review is then barred unless the prisoner can demonstrate cause and prejudice for the default, or that the failure to consider the claims will result in a fundamental miscarriage of justice.  Id.  Prejudice need not be considered where petitioner has failed to fulfill the cause prong of the test.  McCall, 114 F.3d at 758.  The miscarriage of justice exception is only available to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person.  Id.  If the exceptions do not apply, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim.  Carney v. Fabian, 441 F.Supp.2d 1014, 1029 (D.Minn. 2006).

### 2.   Analysis of Claims

#### a.   Ineffective Assistance of Counsel

Respondent asserted that Petitioner's ineffective assistance of counsel claim is procedurally defaulted and should be dismissed because Petitioner has failed to establish why the default should be excused.   The Minnesota Court of Appeals dismissed Petitioner's ineffective assistance of counsel claim.  See State v. Petitioner, 2006 WL 1890176, *5, No. A05-966, (Minn. Ct. App. July 11, 2006) rev. denied (Minn. Sept. 16, 2006).  In dismissing the claim, the court relied on the procedural rule that a claim in an appeal is waived if it is not accompanied by legal or factual support, unless prejudicial error is obvious upon mere inspection.  See State v. Krosch, 642 N.W.2d 713, 719-20 (Minn. 2002) citing State v. Ture, 632 N.W.2d 621, 632 (Minn. 2001); McKenzie v. State, 583 N.W.2d 744, 746 n.1 (Minn. 1998); Louden v. Louden, 22 N.W.2d 164, 166 (Minn. 1946).

A state procedural rule that is firmly established and regularly followed provides an adequate and independent state ground precluding habeas review.  Ford v. Georgia,

498 U.S. 411, 423-24 (1991).   The Minnesota procedural rule at issue here has been established and followed since at least 1946.   See Louden, 22 N.W.2d at 166.   Thus, the waiver rule is an adequate and independent state ground precluding habeas review. Petitioner must show cause and prejudice for the procedural default, or that the failure to consider his claim will result in a fundamental miscarriage of justice.   McCall, 114 F.3d at 758.

In order to establish that failure to consider his claim will result in a fundamental miscarriage of justice, Petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.   See Murray v. Carrier, 477 U.S. 478, 496 (1986).   Petitioner has not alleged actual innocence.   His procedural default can only be excused by a showing of cause and prejudice.

In order to establish cause for procedural default, a prisoner must ordinarily show that an external impediment prevented compliance with the state's procedural rule.   Id. at 497.   In this case, Petitioner alleged ineffective assistance of counsel in his direct appeal.   However, the claim was denied because he failed to explain the factual and legal basis for the claim.   Petitioner has not offered any reasons for this failure.   Further, it is hard to imagine an external impediment that would have prevented him from explaining the basis for his claims.   Petitioner has failed to establish cause for the default.   Therefore, Petitioner's claim of ineffective assistance of counsel should be dismissed because he procedurally defaulted on the claim.   See Murray, 477 U.S. at 497 (habeas claim should be dismissed if petitioner failed to show cause for procedural default unless he can establish actual innocence).

### b.   Sentencing

Respondent argued that Petitioner did not fairly present to the state courts any federal constitutional issue concerning his claims regarding his sentencing.   Upon

review of the record, Respondent is correct.  In his direct appeal, Petitioner alleged only state law in support of his claim that the sentencing court abused it discretion by refusing to grant a downward departure.  Where the habeas petition contains federal constitutional claims that have not been fairly presented to the state court, the claim must be dismissed.  However, whether it is dismissed with or without prejudice depends upon whether the claims are unexhausted such that the petitioner can return to state court to exhaust the claim or whether it is procedurally defaulted.  See O'Sullivan, 526 U.S. at 847-48.

In this case, under Minnesota law, Petitioner is precluded from returning to state court to raise a federal constitutional claim based on the same issues for which he alleged violation of state law on direct appeal where there is no evidence his federal claims were unknown or were so novel that their legal basis was unknown at the time of direct appeal.  See McCall, 114 F.3d at 757-58 citing State v. Knaffla, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (finding that once the petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.").  Thus, his sentencing claim is procedurally defaulted, and must be dismissed unless Petitioner shows cause and prejudice for the default or actual innocence.  Id. at 758.

As noted above, Petitioner has not alleged actual innocence.  Nor has he alleged any reasons for his failure to raise federal constitutional claims concerning his sentencing on direct appeal.  Therefore, his procedural default is not excused, and his sentencing entrapment claim should be dismissed.

### c.    Speedy Trial

Petitioner maintained that his constitutional right to a speedy trial was violated because his trial was not held within 60 days of his speedy trial demand.  In support of

this claim, Petitioner argued that he was prejudiced because there was over a one-year delay between the controlled buys and the trial, and there was no cocaine left to test after the delay.

In its Answer, Respondent responded that the Minnesota Court of Appeals reasonably applied the standards articulated by clearly established United States Supreme Court precedent, Barker v. Wingo, 407 U.S. 514 (1972).   Respondent contended that the Minnesota Court of Appeals correctly noted the minimal delay after Petitioner's assertion of his speedy trial right, Petitioner's own responsibility in the delay, and lack of prejudice caused by the delay.   Because the Minnesota Court of Appeals' application of the Barker standard was not objectively unreasonable, Respondent stated the habeas claim should be denied.   In his response, Petitioner challenged the state court's application of the standard set forth in Barker.

In Barker, the Supreme Court stated:

> The right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or deemed waived.   But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.   We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside.

407 U.S. at 529.

The Court then adopted a balancing test.

> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay; the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

Id.

The Court provided an explanation for each factor. First, the balancing test does not come into play until there is a delay, which is presumptively prejudicial. Id. "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Id. at 530-31. The length of delay is measured from the date of the formal accusation until the date of trial. Doggett v. U.S., 505 U.S. 647, 654 (1992); see also U.S. v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002)("the Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first.").

Under the second factor, where the reason for the delay is overcrowded courts, this is a neutral reason that should be given less weight than a deliberate attempt to hamper a defense. Barker, 407 U.S. at 531. The third factor is the defendant's responsibility to assert his right. Id. Where the defendant has asserted his right to a speedy trial, this factor is entitled to strong evidentiary weight. Id. at 531-32.

The fourth factor is prejudice to the defendant. Id. at 532. Prejudice should be assessed in light of the following interests of the defendant: "(i) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The last interest is the most serious. Id.

Turning to the Minnesota Court of Appeals decision, while the court did not directly cite the holding of Barker in its speedy trial analysis, it did cite to a state case, State v. Windish, 590 N.W.2d 311, 315 (Minn. 1999), which does describe the Barker test, and directs state courts to apply it.  See Rodriguez, 2006 WL 1890176, at *2.  In this regard, the Minnesota Court of Appeals stated:

> To determine whether a delay deprived a defendant of his right to a speedy trial, we examine (1) length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant.   These related factors are balanced "together with such other circumstances as may be relevant"; no factor is independently necessary or sufficient to conclude that the defendant did not receive a speedy trial.

Id.  The appellate court also noted that Minnesota Rule of Criminal Procedure 11.10 requires a defendant's trial to begin within 60 days of his demand for a speedy trial, unless good cause is shown for the delay.  Therefore, the Minnesota Court of Appeals set forth the correct balancing test, as defined in Barker.

The Minnesota Court of Appeals began its analysis by considering the length of the delay.  Rodriguez, 2006 WL 1890176 at *2.  The court determined that the length of delay, sixty-nine days after the defendant demanded a speedy trial, was presumptively unreasonable because it exceeded the 60-day-after-demand-rule applied in Minnesota. Id.

Second, the Minnesota Court of Appeals noted that there were two primary reasons for the delay, an overcrowded court calendar and defense counsel's request for accommodation of his scheduling conflicts.  Id. at *2-3.  The court also observed that the State was willing to proceed to trial before the expiration of the 60-day limit and did nothing to exercise control over the delayed setting, and that Petitioner did not object when the court rescheduled the trial beyond the 60-day limit to accommodate defense

counsel's schedule.  Id. at *3.  The court concluded that "[t]he combination of the court's crowded calendar, the defendant's conduct in initiating scheduling requests, and the defendant's failure to object to the rescheduling suggest that the second factor weighs in favor of the state."  Id.

With respect to the third factor, the court found that Petitioner demanded his right to a speedy trial.  Therefore, the third factor weighed in his favor.  Id.

The appellate court then addressed whether the delay prejudiced defendant.  Id. The court noted there are three policy considerations to examine in assessing prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety of the accused; (3) limiting impairment of the defense.  Id.  The court noted that Petitioner pointed only to the increased separation from his family.  Id.  Because Petitioner's trial was held sixty-nine days after his request for a speedy trial, he was only separated from his family for an additional nine days.  Id.  Therefore, the court found "the rescheduling did not prejudice him."  Id.

The Minnesota Court of Appeals was incorrect when it stated that "[h]is demand for a speedy trial, however, is the operative framework for assessing prejudice."  Id.  In Doggett, the United States Supreme Court stated:

> [w]e have observed in prior cases that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. Barker, 407 U.S. at 532, 92 S.Ct. at 2193; see also Smith v. Hooey, 393 U.S. 374, 377-79, 89 S.Ct. 575, 576-78, 21 L.Ed.2d 607 (1969); United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

505 U.S. at 654 (emphasis added).  Nevertheless, while prejudice to the defendant is the most important factor, Barker instructs that:

> "[w]e regard none of the four factors... [of the balancing test]
> as either a necessary or sufficient condition to the finding of
> the deprivation of the right to a speedy trial.  Rather, they are
> related factors, and must be considered together with such
> other circumstances as may be relevant."

407 U.S. at 533.

In this case, it was relevant that the trial was originally scheduled to start in August 2004 (see Rodriguez, 2006 WL 1890176 at *1), but was delayed because Petitioner obtained new counsel in July 2004.  See Respondent's Exhibit C, (Appellant's Brief to the Minnesota Court of Appeals, p. 5) [Docket No. 4].  Counsel for Petitioner was then granted a continuance of the trial date until January 2005 to accommodate conflicts in his own schedule.  Rodriguez, 2006 WL 1890176 at *1.  When Petitioner made a demand for a speedy trial, the court accommodated that demand by rescheduling the trial for the week of October 27, 2004.  Id.  The trial was delayed nine days beyond Minnesota's 60-day demand rule because of various conflicts defense counsel had during the week of October 27, and the trial court's own schedule.  Id.  The trial was held as soon thereafter as the court could schedule it, November 15, 2004.  Id.

Under the circumstances, it was not unreasonable for the Minnesota Court of Appeals to consider whether the nine days after the 60-day demand period caused prejudice to the Petitioner.

This Court finds that the Minnesota Court of Appeals properly analyzed the first three factors bearing on his speedy trial claim.  The length of delay from formal accusation until trial was just under one year, and the delays were due in large part to the fact that Petitioner hired a new attorney seven months after formal accusation, and his attorney needed time to prepare for trial.  But for a conflict with defense counsel's schedule, the trial would have been held within 60 days of Petitioner's demand for a speedy trial.  Nevertheless, it was held nine days later, and within one-year from the

date Petitioner was formally charged.

The Minnesota Court of Appeals also properly weighed the fact that Petitioner demanded a speedy trial in his favor.  As to the prejudice to Petitioner, it was not unreasonable for the Minnesota Court of Appeals to determine that Petitioner was not prejudiced by his trial commencing nine additional days beyond his 60-day speedy trial demand.  The delay from the period Petitioner's substitute counsel was hired in July until the date he requested a speedy trial in September served Petitioner's interest to allow his new counsel to prepare for trial and to accommodate his schedule.  Therefore, the Minnesota Court of Appeals did not unreasonably apply the balancing test announced in <u>Barker</u>, and Petitioner's speedy trial claim should be dismissed.

## III.    <u>CONCLUSION</u>

For the reasons discussed above, the Court concludes that Petitioner is not entitled to a writ of habeas corpus on any of his three claims for relief presented in his Petition.   Petitioner's ineffective assistance of counsel claim is also procedurally defaulted because he waived this claim by failing to offer factual and legal support for the claim in the Minnesota Court of Appeals.   Petitioner's sentencing claim is also procedurally defaulted because he failed to fairly present the federal nature of his claim to the state courts, and under Minnesota law, he is precluded from raising the claim in a petition for post-conviction relief.  Finally, Petitioner's speedy trial claim fails because he did not establish that the Minnesota Court of Appeals' decision in his case was either was either contrary to clearly established law or involved an unreasonable application of clearly established Federal law.

**IV.**   **RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED THAT:

1.  Petitioner's Motion to Appoint Counsel [Docket No. 15] be DENIED;

2.  Petitioner's Motion for a Hearing [Docket No. 21] be DENIED;

3.  Petitioner's Motion to Compel [Docket No. 22] be DENIED;

4.  Petitioner's Motion to Amend/Correct [Docket No. 23] be DENIED;

5.  Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1] be DENIED; and

6.  This action be DISMISSED WITH PREJUDICE.

Dated:  January 23, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 11, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.